UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Terrence Burks,<br>    *Plaintiff*,<br><br>v.<br><br>Montgomery County, Deputy Cory Brown, and Deputy Clifford Wood<br>    *Defendants* | Case No. _____ |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

Terrence Burks ("Plaintiff") respectfully comes before this Honorable Court pursuant to 42 U.S.C 1983 complaining of the Montgomery County (hereinafter "Montgomery") and Deputy Cory Brown and Deputy Clifford Wood (collectively referred to as "Defendants"). The Defendants acted under color of state law and deprived the Plaintiff of his right to be free from false arrest and malicious prosecution in violation of the Fourth and Fourteenth Amendments to the United States Constitution. The Plaintiff specifically alleges the following:

### PARTIES AND ADVERSE PERSON(S)

1. Plaintiff, Terrence Burks, is an individual who resides in Montgomery County, Texas and may be reached by and through counsel of record: Alexander Houthuijzen, 917 Franklin St. Suite 230, Houston, Texas 77002 Phone: (713) 600-

9902 Fax: (832) 565-9003.

2. Defendant, Montgomery County, is duly-organized county in the State of Texas and may be served with process by serving the Montgomery County Attorney's Office at 501 North Thompson, Suite 300, Conroe, Texas 77301.

3. Defendant, Deputy Cory Brown is a law enforcement officer and may be served at #1 Criminal Justice Drive, Conroe, Texas 77301.

4. Defendant, Deputy Clifford Wood is a law enforcement officer and may be served at #1 Criminal Justice Drive, Conroe, Texas 77301.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and 1343(a)(3) and (4) because the Plaintiff's suit arises under 42 U.S.C. 1983.

6. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1342, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

7. Plaintiff brings this action to redress the unlawful arrest of Plaintiff pursuant to 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution made applicable to Defendants because of this federal due process violation.

8. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. §1367(a), to hear and decide claims arising under state law.

9. Venue is proper in this district court pursuant to 28 U.S.C. §1391(b) because Defendants reside or resided in this district during the relevant time period and all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Southern District of Texas.

10. All conditions precedent have been performed or have occurred.

## BACKGROUND FACTS RELEVANT TO ALL COUNTS

11. On January 6, 2019, Deputy Brown and Deputy Wood responded to an alleged family violence call, which was actually a call to the police requesting officers to remove a white female who was causing a disturbance.

12. That evening, Mr. Burks was at home with his then-girlfriend, Alicia Gonzalez,

13. At some point in the evening, Mr. Burks' estranged white spouse, Dawn Burks, came to the residence seeking to gain entry.

14. She was standing at the door, screaming and pounding on the door.

15. Alicia Gonzalez phoned the police so that Mrs. Burks could be removed.

16. Dawn Burks is even listed on the call slip as the suspect in the case by name and

description as the suspect in the case.

17. However, Mr. Burks became the suspect and was ultimately detained and placed under arrest for interfering with public duties though the offense report makes note of an unfounded resisting arrest charge and "aamc offense not ucr valid".

18. When Deputies arrived at the scene they could not locate Mr. Burks residence and requested their dispatcher call back to ascertain if the reportee (Alicia Gonzalez) could see the deputies and Alicia Gonzalez advised she could. At any point the deputies could have told the dispatcher to have Alicia Gonzalez exit the residence but they did not.

19. Mr. Burks was unaware that deputies had been called to his residence. When deputies arrived at his home, they commanded Mr. Burks to open his door and exit the residence. While feeling secure in his residence, Mr. Burks did not.

20. Deputies did not advise why they were there nor their intent but demanded Mr. Burks exit the residences and go outside and Mr. Burks refused to exit his residence but advised deputies that no crimes had been committed and no one was in harm. Mr. Burks then retired to his bedroom, understanding, he was not a suspect in a crime, a witness of a crime nor a victim of a crime.

21. Deputy Wood and Deputy Brown after speaking to Dawn Burks and Autumn Burks, Mr. Burks' daughter from outside of the residence, the deputies forced their way into Mr. Burks' home through a back door, detaining Mr. Burks adult daughter, who told them they could not illegally enter the home. Autumn Burks was placed in

handcuffs and told she would be arrested for Interfering after she calmly attempted to explain what had occurred. Deputies had no exigency, and had means to contact Alicia Gonzalez to have her exit the house.

22. After deputies searched Mr. Burks' residence and found he was in his bedroom, Mr. Burks advised deputies that no one was in harm and no crimes were committed. Mr. Burks advised deputies they did not have authority to enter his residence. Mr. Burks did not want them to come in and closed the door and locked it.

23. There was no reason for officers to enter the house because Dawn Burks was at all relevant times, outside the house causing the disturbance and she was the first person that deputies physically came in contact. Dawn Burks was never restrained or detained but was free to walk about.

24. Officers did not follow their call slip, instead targeted and arrested the only African- American male in sight, Plaintiff. Mr. Burks asked Alicia Gonzalez to open the door and speak to deputies. When she did Mr. Burks was met with force, with threats and weapons pointed at him.

25. At no point, did Plaintiff commit a crime or do anything wrong, thus the officers' entry into his residence was illegal and only a means for them to perpetrate the unlawful and illegal arrest of Mr. Burks. Deputies showed implicit bias when they did not seek criminal charges against Autumn Burks, who told them they could not enter the residence.

26. Deputy Wood and Deputy Brown conspired with Patrol supervisors to arrest and maintain Mr. Burks by presenting and swearing to false testimony on affidavit.

27. Deputy Wood and Deputy Brown went into the house through the back door which was ajar.

28. Mr. Burks spent a night in jail.

29. Mr. Burks hired a lawyer.

30. Mr. Burks' case was ultimately dismissed on February 4, 2019 and the motion to dismiss was imaged on February 6, 2019.

## CAUSES OF ACTION
### COUNT 1: 42 U.S.C. 1983

31. Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 47.

32. During all relevant time periods complained of herein, the Plaintiff had a clearly-established right to be free from unreasonable searches and seizures that was protected by both the Fourth Amendment and Fourteenth Amendment to the United States Constitution. This violation of this right forms the basis of the Plaintiff's claim.

33. The Plaintiff's right to be free from unreasonable searches and seizures was violated when the events described in this complaint unfolded.

34. During all relevant time periods complained of herein, the officers complained of were acting under color of state law because: (a) they sought and obtained the Plaintiff's arrest and (b) they arrested and jailed the Plaintiff pursuant to the Texas Code of Criminal Procedure; and (c) they took certain actions to encourage the Montgomery County District Attorney to accept or otherwise maintain criminal charges against the Plaintiff. But for their status as peace officers, the officers complained of would not have been able to perpetrate the wrongs complained of in this petition.

35. Montgomery County suffers from certain practices so persistent and widespread as to practically have the force of law. These practices include failing to meaningfully investigate assault family violence and the actual facts and circumstances of a distress call. For clarity's sake, the Plaintiff would show that the Montgomery County's failure to meaningfully investigate assault is not a complaint of negligent or botched investigations, but is instead a complaint about what amounts to effectively no investigation whatsoever. Montgomery County's practices also include criminally prosecuting innocent persons, at least in part, on the basis of their ethnic heritage. The Plaintiff would also show that Montgomery County has a practice of seeking the arrest of innocent persons where the only facts supporting arrest are officer's misunderstanding of applicable law. Finally, the Plaintiff complains that Montgomery County has a practice of "willful blindness" in its criminal prosecutions in that Montgomery County has a practice of refusing to

consider exculpatory evidence in its criminal prosecutions. The practices complained of herein are so persistent and widespread as to practically have the force of law.

36. The Plaintiff is not the only victim of the Montgomery County's practices. Scores of other innocent African-American men have suffered from these practices. The Montgomery County's practices are therefore "well-settled practice[s]."

37. The officers complained of in this complaint are not entitled to a defense of qualified immunity. It cannot be said that their actions "could reasonably have been thought consistent with" the violation of the Plaintiff's right to be free from unreasonable searches and seizures. This right was clearly established at the time the Plaintiff was deprived of it. The officers' actions were unreasonable, given the state of the law at the time of the deprivation, and not reasonable in light of the facts and circumstances that existed. Stated differently, thousands of other Texas peace officers would have: (a) not entered a residence without probable cause to enter the residence; (b) conducted a more in-depth investigation and actually listened to the call slip and looked for the relevant suspect; (c) considered exculpatory evidence; and (d) would have waited until the requisite threshold of probable cause was met before seeking an arrest of Plaintiff. The behaviors of the officers of this case were extremely below any reasonable standard of policing and resembles

more closely the shameful lynching that African-American men have historically suffered in the deep south.

38. As a result of these constitutional injuries, the Plaintiff suffered actual losses, mental anguish, humiliation, impairment of reputation, and out-of-pocket losses. Even absent these damages, the Court must and should award the Plaintiff nominal damages.

39. Additionally, Montgomery County officers, while acting within their official capacity, deprived Plaintiff of his constitutional rights to be free from unfounded arrest and bad faith prosecution. A claim of false arrest implicates guarantees of the Fourth and Fourteenth Amendments and, therefore, is actionable under § 1983. *See Sorenson v. Ferrie,* 134 F.3d 325, 328 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299,1305 (5th Cir. 1995); *Sanders v. English,* 950 F.2d 1152, 1159 (5th Cir. 1992); *Thomas v. Kippermann,* 846 F.2d 1009, 1011 (5th Cir. 1988). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. *See Blessing v. Freestone,* 520 U.S. 329, 340, 137 L. Ed. 2d 569, 117 S. Ct. 1353 (1997); *Daniels v. Williams,* 474 U.S. 327, 330, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986); *Augustine v. Doe,* 740 F.2d 322, 324-25 (5th Cir. 1984).

40. Deputy Wood and Deputy Brown arrested Plaintiff without probable cause. They acted intentionally and not out of negligence. Further both deputies, acted with

reckless disregard for the truth. Furthermore, Montgomery County Sheriff's officers arrested Plaintiff based entirely on his skin color and not on facts or testimony of any credible person.

41. The custom or policy at issue here is that the police failed to note what was contained in the call slip before arresting the Plaintiff to make sure that he was the right suspect. Because it has become a policy at Montgomery County Sheriff's Office not to follow simple police procedures such as using a call slip to determine a suspect or asking witnesses about who the suspect is; they have set in motion a policy that violates the Constitutional rights of the citizens of this city to be free from unreasonable searches and seizures as well as unfounded arrests or prosecutions based on nothing more than racist premonitions.

42. Furthermore, no meaningful investigation was conducted by Deputy Brown or Deputy Wood.

43. The foregoing actions amounted to a clear violation of the Plaintiff's constitutional rights.

44. The Plaintiff was falsely arrested. The naked truth in this case is that the totality of the circumstances might reveal, as they did in the Plaintiff's case that ignoring this likelihood that Plaintiff did nothing wrong, and conveniently omitting it from discussions with the prosecutor who took charges against Plaintiff, is not justice and falls well below the threshold of probable cause.

45. During all relevant times complained of, the Plaintiff had the right to be free from

bad faith prosecution. *See* Shaw v. Garrison, 467 F. 2d 113, 120 (5th Cir. 1972). Montgomery County's investigation of the Plaintiff was so devoid of intelligent fact-finding that it rose to the level of "bad faith" prosecution. The actions of both Deputies reflect a deep malice towards the Plaintiff, caused by the Plaintiff's refusal to admit to a crime he did not commit. Much like a child throwing a temper tantrum, deputies threw a fit when she did not get what they wanted. Only, instead of milk spilling, freedom spilled. Since both deputies investigated and prosecuted the Plaintiff in bad faith, they deprived the Plaintiff of his substantive due process right to be free from bad faith prosecution as recognized in Shaw and protected by the United State Constitution.

46. The exact statements that the deputies made are beyond the Plaintiff's reach at the present moment. However, discovery will likely reveal, just like the facts suggest, that deputies concealed from the prosecutor who accepted charges the fact that they had entered a citizen's house without a warrant in direct contradiction of all applicable law on the subject. They claimed community-caretaking when the only person that was directed at was the suspect who was outside the residence. The malice of deputies towards the Plaintiff was the driving factor behind this concealment. The septic malice of Montgomery County's policies, acted out through the deputies, likely tainted and manipulated the prosecutor.

47. Discovery will show that the actions of the deputies constitute a reckless disregard

for the truth. Deputy Wood and Deputy Brown were well aware of the fact that the investigation of Plaintiff hinged on their entry into his house and on the call slip which clearly indicated that Plaintiff was not the person of interest.. If concealing that fact that the Plaintiff may be innocent is not a reckless disregard for the truth, what is?

48. Plaintiff's contention is that similarly situated white men are treated differently than the Plaintiff was. They are not, for example, criminally prosecuted for crimes they did not commit because they are the only African-American person present at a crime scene. Since there was a group of similarly situated persons that

49. Montgomery County treated differently, the Plaintiff was denied equal protection.

## COUNT 2: 42 U.S.C. 1983 and Failure to Train

50. Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 62.

51. The Montgomery County failed to train, supervise, and discipline its employees amounting to a deliberate indifference to the Plaintiff's constitutional rights. *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

52. At all times relevant, the Defendants had a duty to train, supervise, and discipline their employees and agents. The Defendants did not train the deputies properly. Deputy Brown and Wood procured an arrest based upon their illegal entry into a residence without probable cause or a warrant.

53. Defendant, Deputy Wood and Deputy Brown, never conducted a meaningful investigation to determine if Plaintiff was the actual suspect and this failure amounts to deliberate indifference to the Plaintiff's constitutional right to be free from unlawful arrest. If Deputy Brown and Deputy Wood had approached the suspect, Dawn Burks, gotten the situation under control, and left, nothing would have ever happened. These deputies decided to enter Plaintiff's residence and none of these terrible events would have ever unfolded in his life, but for that action by Defendants. Plaintiff has to spend the rest of his life knowing that he was unlawfully and wrongfully accused of interfering with public duties, when he was doing nothing but minding his own business at his own residence.

54. Defendants breached that duty, in part, by
    a. Improperly training, authorizing, encouraging or directing officers on proper use of force
    b. Failing to investigate allegations of false arrest and improper police techniques (such as not performing a lineup to check a suspect with a complainant)
    c. Failing to discipline for violations of policy concerning lineup procedures.
    d. Failing to interview witness at the scene or afterward who would have pertinent testimony as to the guilt or innocence of an accused,

55. This policy is tacitly or overtly sanctioned, as evidenced by the conduct of Montgomery County Sheriff's Office and the Montgomery County's failure to train,

supervise, investigate, and discipline any of the officers involved in this incident amounting to deliberate indifference to Plaintiff's constitutional rights.

56. *Monell* liability can be imputed to all Defendants because there was a failure to train the police officers in this case in doing proper police work. Even without a pattern of previous constitutional violations, Plaintiff prevails on any question of law concerning whether *Monell* liability can be imputed to the city for one constitutional violation. *Brown v. Bryan County, OK*, 219 F.3d 450 (5th Cir. 2000).

## **JURY DEMAND**

57. Plaintiff asserts his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## **PRAYER FOR RELIEF**

58. For all of the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment against Defendants consistent with the relief requested herein and award the Plaintiff $1,000,000.00 in actual damages and $1,000,000.00 in punitive damages along with costs of this action including reasonable attorney fees, and for any and all other relief Plaintiff is entitled.

Dated: November 16, 2020

                          Respectfully Submitted,

                          */s/ Alexander Houthuijzen*
                          **Alexander J. Houthuijzen**
                          Texas Bar No. 24101224
                          Fed ID No. 3083690
                          917 Franklin St. 230
                          Houston, Texas 77002
                          (713) 600-9902
                          (832) 565-9003
                          alex@alexthedefender.com
                          *Attorney for Plaintiff*